```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
FREDERICK JACKSON,

                          Plaintiff,           06-CV-6609

            v.                                 DECISION
                                               and ORDER
JO ANNE B. BARNHART, Commissioner
of Social Security

                          Defendant.
_____
```

## INTRODUCTION

Plaintiff Frederick B. Jackson brings this action pursuant to Title II of the Social Security Act, § 201 et. seq. (codified at 42 U.S.C. § 401 et. seq.) claiming that the Commissioner of Social Security improperly denied him disability benefits.[1] Specifically, Jackson alleges that the decision of the Administrative Law Judge (ALJ) is erroneous because it was not supported by substantial evidence in the record.

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. Jackson opposes the defendant's motion.

## BACKGROUND

On June 16, 1997, Frederick B. Jackson ("Jackson"), a 34 year old former warehouse worker, box stripper and press operator

---

[1] This case (formerly civil case 02-CV-0179(E)) was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated October 26, 2006.

applied for Social Security disability benefits, claiming that he became unable to work as of September 12, 1994 because of a back condition. Jackson was denied benefits on July 30, 1997, and thereafter requested reconsideration which was denied on January 12, 1998.  Plaintiff requested an administrative hearing, which was held on January 22, 1999, at which time he was represented by an attorney.  Thereafter, on April 19, 2000, the ALJ held a supplemental hearing where plaintiff, with his attorney, appeared.

On the basis of the hearings and the medical record, the ALJ found that although Jackson suffered from a back condition, he did not have a disability as defined by 42 U.S.C. § 423(d) or 20 C.F.R. 404.1501 et seq. (1994) (listing specific impairments that constitute a disability under the Social Security Act). Thereafter, Jackson's appeal of the ALJ's decision to the Social Security Appeals Board was denied, and on March 7, 2002, plaintiff filed this action.

## DISCUSSION

I. **Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v NLRB,

305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding a reviewing court does not try a benefits case de novo).

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp 265, 267 (S.D. Tex. 1983) (citation omitted). Defendant asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the court is convinced that "the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Because the court determines that the findings of the Commissioner are supported by substantial evidence, judgment on the pleadings is hereby granted for the defendant.

## II.  **Plaintiff's Medical History**

Jackson was initially diagnosed with severe lumbosacral strain and strained left upper rectus muscles. His treating physician, Dr. Brown, found him totally disabled but made no finding as to his

residual functional capacity. In May 1995, Dr. Brown opined that he could return to work provided he did no lifting, pushing, or pulling and could sit, stand and move around as much as necessary to avoid mid and low back pain. Dr. Brown made no specific objective or diagnostic findings to support his opinion. Jackson was then referred to a pain management specialist, Dr. Bansal, who found that plaintiff had decreased sensation in his left side at T7, T8, and T9, together with an absent abdominal reflex over the umblicus on the left. Dr. Bansal concluded that Jackson had radiculopathy at T7, T8, and T9. He prescribed medication, physical therapy, and suggested he might benefit from epidural steroid injections. Dr. Bansal opined that Jackson was "completely disabled" but should be able to return to work in three months.

Plaintiff was referred to Dr. James J. White, an orthopedic surgeon on February 2, 1996. Dr. White identified Jackson's lumbar spine as his major problem and requested an MRI. An MRI was performed on May 29, 1996 and revealed a moderate central to left, paracentral disc herniation at T8-9 with extrusion of the disc causing displacement of the left T9 nerve root as well as mild disc degeneration at T5-6. Dr. White disagreed with the radiologist report and concluded that there was not any extrusion of the disc, finding only some degree of central protrusion but no true cord compression. In July 1996, Dr. White told Jackson that if his quality of life was unacceptable, an operation would be an appropriate treatment.

On September 10, 1996, Jackson was seen by an orthopedic surgeon, Dr. Eugene E. Cisek for a third IME. Dr. Cisek found the plaintiff had a herniated thoracic disc that had not improved with conservative care. He concluded that Jackson had a temporary marked partial disability, and that he would do well with surgical intervention in the form of discectomy and fusion. As of the date of the ALJ's hearing, Jackson did not and had not opted to undergo surgery. Yet both treating and examining sources concluded that an operation was the appropriate form of treatment. Dr. White opined that surgery would be reasonable treatment and that Jackson would have significant relief following surgery. Absent surgery, Dr. White continued to characterize Jackson's level of disability as high to marked or moderate. Dr. White told Jackson "he can be made better with surgery" and that although he understood Jackson's reticence to proceed with surgery, there was no other way to decrease his symptoms. Jackson came under the care of Dr. Glennel Smith in June 1997 when his treating physician, Dr. Brown, retired. Dr. Smith opined that claimant was totally disabled but did not substantiate that opinion with supporting medical evidence.

Jackson continued to treat with Dr. White, who documented his ongoing neurological problems and concluded that operative intervention to address the abnormality at T8-9 was the only way Jackson's subjective complaints could be resolved. Pending that surgery, Dr. White concluded that Jackson was having a moderate to marked degree of disability. Even though Jackson did not proceed

with surgery, Dr. White clearly indicated that he is nonetheless able to engage in some activity. In his report dated March 26, 1999, he stated that Jackson was "a candidate ideally for sedentary work, possibly light duty but certainly nothing more." He later saw Dr. Edward D. Simmons, an orthopedic surgeon, for a second opinion on October 4, 1999. That examination focused almost exclusively on the plaintiff's low back and lower extremities rather than T8-9 level that Dr. White indicated should be operated on. After taking x-rays of Jackson's lumbar spine and after reviewing his 1998 lumbar MRI, Dr. Simmons concluded that Jackson had only a slight abnormality at L4-5.

### III. **The Commissioner's decision to deny Plaintiff benefits was supported by substantial evidence on the record**.

The ALJ made his determination based on the evidence before him and concluded that plaintiff did not suffer from a disability[2] under the Act. Specifically, the ALJ found that while Jackson suffered from disc degeneration at L4-5, this lower back condition did not constitute an impairment under 20 C.F.R. 404.1501 et seq. (Tr. 14). The ALJ took into account Jackson's subjective complaints of pain, and found that although he could not perform his previous work as a warehouse worker and press operator, he could perform full range of light work, as defined by 20 C.F.R. 404.1567. (Id.).

---

[2]A disability is defined by 42 U.S.C. § 423(d) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d) (1991).

I find that the substantial evidence in the record supports the ALJ's finding that plaintiff does not suffer from a disability. Not one of the doctors who examined Jackson concluded that he was permanently disabled. While plaintiff's pain management doctor did indicate that he was completely disabled for a three-month period, the doctor never opined that Jackson was <u>permanently</u> disabled.

Jackson's treating and examining physicians concluded that surgical intervention would be reasonable treatment and that he would have significant relief following surgery. Absent surgery, Dr. White continued to characterize Jackson's level of disability as high to marked or moderate. Dr. White told Jackson "he can be made better with surgery" and that although he understood Jackson's reticence to proceed with surgery, there was no other way to decrease his symptoms. In cases of refusal of surgery, a doctor's predictions of success, a patient's fear of pain or fear of surgery itself and even the doctor-patient relationship are factors to be considered in determining whether a social security disability benefits claimant reasonably refused prescribed medical treatment. <u>See</u> 20 C.F.R. § 404.1530(b)(c); <u>see</u> <u>also</u> <u>Benedict v. Heckler</u>, 1984, 593 F.Supp. 755, 759-60 (E.D.N.Y. 1984); <u>Kakish v. Secretary of Dep't. of Health and Human Services</u>, 1984 WL 550 (S.D.N.Y. 1984) (§404.1530 permits termination of benefits to claimants who, without good reason, refuse prescribed treatment, which could restore their ability to work).

Here, Jackson saw various doctors who stated that he would have significant relief following surgery. Jackson did not follow the course of treatment, which his treating physician advised and his failure to follow that advice insures his disability. Accordingly, plaintiff's own behavior in refusing to follow his doctor's advice, which would cure or lessen his disability forms one of the basis for denial of his benefits. In addition, even without surgery, the ALJ found that Jackson had the residual functional capacity to perform the physical exertion requirements for the full range of light work, which involves lifting no more than 20 pounds at a time or frequent lifting or carrying of objects weighing up to 10 pounds, as well as stand or walk for up to six hours and sit for up to six hours during the course of an eight-hour workday. (Tr. 21). The ALJ also found that because Jackson could do light work, he could perform full range of sedentary work as well, as defined by 20 C.F.R. 404.1567. (Id.). Moreover, the ALJ engaged in an extremely thorough review of the copious medical evidence in this case, afforded plaintiff the opportunity to present further evidence in a supplemental hearing, and issued a comprehensive ruling addressing each issue raised by Jackson.

Based on the foregoing medical evidence, the ALJ's decision that plaintiff did not have a disability under the act satisfies the "reasonable mind" test as stated in Consolidated Edison. See 305 U.S. at 229.

**CONCLUSION**

Substantial evidence exists in the record, which supports the ALJ's conclusion that plaintiff was not disabled during the relevant period, and therefore, the Commissioner's decision is affirmed and judgment on the pleadings in favor of the defendant is granted.

ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          December 28, 2006